IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

LACEY ROBINETT, Individually and
on behalf of all others similarly situated                          PLAINTIFF

v.                          No. 3:16-cv-188-DPM

SHELBY COUNTY HEALTHCARE
CORPORATION, d/b/a Regional One
Health and d/b/a Regional Medical Center;
and AVECTUS HEALTHCARE
SOLUTIONS LLC                                                       DEFENDANTS

ORDER

1. Who pays? And how much? These are the deep questions raised by The Med's emergency care of Lacey Robinett after a car wreck; her eventual settlement with the other driver's insurance company; and The Med's effort to collect the rack rate for its services from that settlement, rather than seeking or accepting payment from Medicaid at that program's reduced rate. Robinett is an Arkansas Medicaid participant. She was involved in a car wreck in Lawrence County, Arkansas, then airlifted to The Med in Memphis, the trauma center for the region.

Decades ago, The Med agreed to participate in Arkansas's version of Medicaid. № 11-3. Among other things, The Med agreed "to accept payment from Medicaid as payment in full for a covered service, and to make no

additional charges to the patient or accept any additional payment from the patient for that service which is covered under the Medicaid Program, [and] to take assignment and file claim with third party sources (Medical, liability insurance, etc.), and if third party payment is made to the Provider, reimburse Medicaid up to the amount Medicaid paid for the services[.]" *Ibid.*

Neither Robinett nor a family member signed The Med's admission agreement. Someone, presumably The Med employee who handled the paperwork, wrote in "Pt unable to sign Due to Medical Condition." № 11-1. The parties seem to agree, though, that Robinett assented to the admission agreement. № 11 at ¶ 12; № 17 at ¶ 12; № 18 at ¶ 12. It contains waterfront assignments—of health insurance benefits, other insurance benefits, and "claims for payment that I am entitled to or are otherwise due or payable to me or my estate from any additional source for hospitalization and/or other clinical expenses." № 11-1.

The agreement mentions a resulting lien. But apart from any contract between Robinett and The Med, when the hospital provided these medical services, a lien arose under Tennessee law. "Every [entity] . . . operating and maintaining a hospital in this state, shall have a lien for all reasonable and

necessary charges for hospital care, treatment and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims or demands accruing to the person to whom such care . . . was furnished, . . . on account of illness or injuries giving rise to such causes of action or claims and which necessitated such hospital care, treatment and maintenance." TENN. CODE ANN. § 29-22-101(a). The Med, the parties seem to agree, gave notice of its lien with a public filing. The lien asserted was for $23,750.54 — the amount The Med would have charged a patient who was paying out of pocket for the care provided to Robinett. The Med didn't seek payment from Medicaid. It stood on its lien and assigned its rights to Avectus, a medical bill collector.

Robinett eventually settled with the other driver's insurance company for $100,000. Avectus demanded the $23,750.54. As best the Court can tell, the settlement proceeds remain in limbo. Robinett filed this case, asserting many claims, on behalf of herself and others similarly situated. She says the hospital's maneuver violated Federal and Arkansas Medicaid law, offended several Arkansas statutes, broke contracts touching the disputes, amounted to unjust enrichment and conversion, and was a conspiracy with Avectus.

The core of Robinett's argument is that, because she's Medicaid eligible and The Med is a participating provider, she owes from the settlement, at most, the amount Medicaid would have paid the hospital. The Med and Avectus respond that they did nothing wrong: Instead of taking a certain but reduced payment from Medicaid, they say they gambled on Robinett's potential recovery from a third party, and won.

2. The Med and Avectus are entitled to judgment on the pleadings. FED. R. CIV. P. 12(c); *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). Nothing in federal or Arkansas law prohibited The Med's maneuver in the circumstances presented.

Federal law prevents providers from pursuing Medicaid beneficiaries except in limited circumstances. 42 U.S.C. § 1396a(a)(25)(C); *Wesley Health Care Center, Inc. v. DeBuono*, 244 F.3d 280, 281–83 (2d Cir. 2001). The whole point of the statutory scheme is that The Med must, instead, accept what Arkansas (subsidized by federal dollars) is willing to pay. 42 C.F.R. § 447.15. But when third parties are potentially responsible, two tangles (one federal and one state) of statutory provisions and regulations come into play. The parties have described and ably argued from all these. But The Med and Avectus offer the better reading of the applicable federal provisions: The

premise of an obligation to accept the Medicaid-set amount for care is the submission to, and payment by, Medicaid of the bill. 42 U.S.C. § 1396a(a)(25)(B) & (H) & (I)(ii). That's the operative action under the statute. The state agency must pursue reimbursement from a potentially liable third party after payment *has been made* under the state plan. *Ibid; see also* 42 C.F.R. § 433.139(d)(2). Before that, the billing decision is in the provider's hands. The statute's implementing regulations contemplate that a provider might pursue a third party, and that a state plan could require a provider to do so, 42 C.F.R. § 433.139(b)–(d). And some state plans do. *E.g.*, LA. REV. STAT. ANN. § 46:437.12(A)(6); N.Y. COMP. CODES R. & REGS. tit. 18 § 540.6(e)(2).

Arkansas law doesn't bar The Med's maneuver either. It bars substitute billing (billing the patient after the provider has agreed to accept payment from Medicaid) and double billing (billing Medicaid and the patient). ARK. CODE ANN. § 20-77-104 & § 20-77-105. Robinett argues that if the law allows The Med and Avectus to assert a lien for more than the Medicaid rate on settlement proceeds from a third party, then—in truth—they're directly billing her, and she will pay more than Medicaid's reimbursement rate. And she points out that the state statute prohibits payment by a Medicaid

participant of an amount higher than the provider agreed to accept from Medicaid. The Med and Avectus respond that Arkansas law prohibits a provider from billing a Medicaid patient only if the provider has already billed Medicaid. They say a provider—even though it's agreed to participate in Arkansas Medicaid—hasn't "agreed to accept" payment from Medicaid unless and until it has billed Medicaid. ARK. CODE ANN. § 20-77-104(c). The provider doesn't agree to accept the reduced amount from all the world, they continue, merely by participating in the state program.

The closest precedent, though it's not binding, is *Miller v. Gorski Wladyslaw Estate*, 547 F.3d 273 (5th Cir. 2008). The Fifth Circuit analyzed the federal law carefully and rejected a nearly identical challenge to Baton Rouge General Hospital's pursuit of payment through lien instead of seeking or receiving payment by Medicaid. The Second, Sixth, and Seventh Circuits had each suggested in *dicta*, in similar disputes, that a health care provider could go this route—so long as it hadn't sought or accepted the Medicaid payment for a particular patient's care. *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust Dated June 27, 2002*, 410 F.3d 304, 315 (6th Cir. 2005); *Wesley*, 244 F.3d at 283 n.1; *Evanston Hospital v. Hauck*, 1 F.3d 540,

542–43 (7th Cir. 1993). The Court has looked for, but not found, any case, federal or state, that has adopted Robinett's reading of the federal law on point or a state Medicaid statute similar to Arkansas's. None of the parties has pointed the Court to such a case.

Whether The Med's provider agreement with Arkansas Social Services (which administered Arkansas Medicaid at the time of the agreement) is a contract or not isn't dispositive. *Compare Spectrum*, 410 F.3d at 315, *with Tuohey v. Chenal Healthcare, LLC*, 173 F. Supp. 3d 804, 811–12 (E.D. Ark. 2016), *and Southeast Arkansas Hospice, Inc. v. Sebelius*, 1 F. Supp. 3d 915, 925–26 (E.D. Ark. 2014). The provider agreement is silent about The Med's choice to forego a certain but reduced Medicaid payment in hopes of getting more by lien from Robinett and the other driver. So, too, the admission agreement. Whether or not Robinett and The Med made that contract, Tennessee law gave the hospital a lien when the care was given. TENN. CODE ANN. § 29-22-101(a).

The parties agree that Robinett's various non-Medicaid claims — statutory, common law, and restitutionary — travel with the Medicaid issues. Therefore, they fail too.

**3.** Robinett's complaint will be dismissed with prejudice, with one carve out. She has not pleaded or argued the various issues that may exist under the Tennessee statute about the lien—the niceties of filing, priority, and amount. None of the related facts have been disputed or decided. The dismissal is therefore without prejudice to later adjudication, if need be, of all lien particulars under Tenn. Code Ann. § 29-22-102.

\* \* \*

The settlement proceeds are the fund for paying The Med's bill. The amount due is a matter of Tennessee law, including the lien statute, not the amount The Med would have to accept if Arkansas's Medicaid program were paying for Robinett's care. Motions, № 23 & 24-2, granted.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

31 January 2017